NO. 22-10509-J

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————————

## UNITED STATES OF AMERICA,
*Appellee,*

**v.**

## LAWRENCE CURTIN,
*Appellant.*

———————————————

## On Appeal from the United States District Court
## for the Southern District of Florida

———————————————

## INITIAL BRIEF OF THE APPELLANT
## LAWRENCE CURTIN

———————————————

**MICHAEL CARUSO**
  **Federal Public Defender**
**Bernardo Lopez**
  **Assistant Federal Public Defender**
  **Attorney For Appellant Curtin**
  **1 E. Broward Blvd., Suite 1100**
  **Fort Lauderdale, Florida 33301**
  **Telephone No. (954) 356-7436**

## THIS CASE IS ENTITLED TO PREFERENCE
## (CRIMINAL APPEAL)

---

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### United States v. Lawrence Curtin
### Case No. 22-10509-J

Appellant, Mr. Lawrence Curtin, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Altonaga, Hon. Cecilia M., United States District Judge

Bharathi, Sowmya, Assistant Federal Public Defender

Caruso, Michael, Federal Public Defender

Curtin, Lawrence, Appellant

Gonzalez, Juan A., United States Attorney

Jayanthi, Srilekha, Assistant Federal Public Defender

Jung, Hon. William F., United States District Judge

Lopez, Alejandra Lizzette, Assistant United States Attorney

Lopez, Bernardo, Assistant Federal Public Defender

Louis, Hon. Lauren Fleischer, United States Magistrate Judge

Otazo-Reyes, Hon. Alicia M., United States Magistrate Judge

Rosenzweig, Assistant United States Attorney

Rubio, Lisa Tobin, Chief, Appellate Division, United States

Attorney's Office

United States of America, Plaintiff/Appellee


_s/Bernardo Lopez_
Bernardo Lopez

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ...................................................... C-1

TABLE OF CITATIONS ........................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ................................. ix

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ................................................................ x

STATEMENT OF THE ISSUES ................................................ 1

STATEMENT OF THE CASE ................................................. 3

    Course of Proceedings and Disposition in the District Court ........ 3

    Statement of Facts ..................................................... 4

    Standards of Review ................................................... 15

SUMMARY OF THE ARGUMENT ......................................... 17

ARGUMENT AND CITATIONS OF AUTHORITY .............................. 21

I.    The Government failed to prove beyond a reasonable doubt
that Mr. Curtin intended to issue a real threat against Judge
Maynard or that Mr. Curtin knew that his communications
would be viewed as a threat by Judge Maynard. ......................... 22

II.   The district court erred when it denied Mr. Curtin's motion to
dismiss the superseding indictment where Mr. Curtin was
detained for evaluation and treatment by the Attorney
General beyond the term of hospitalization authorized by
statute .................................................................... 33

i

III.    The District Court for the Southern District of Florida erred as a matter of law when it failed to sua sponte recuse itself from deciding any material issues in Mr. Curtin's prosecution for threatening a Southern District of Florida federal magistrate judge where the District Court for the Southern District of Florida decided substantive issues such as bond, competency and motions to dismiss the indictment against Mr. Curtin while Mr. Curtin remained imprisoned for almost a year before the prosecution was transferred to the Middle District of Florida ........................................................................ 40

IV.    The district court imposed a procedurally unreasonable sentence when it failed to reduce the offense level by four levels pursuant to U.S.S.G. 2A6.1(b)(6) where Mr. Curtin's offense involved a single instance involving little or no deliberation ........................................................................ 48

V.    The district court imposed a substantively unreasonable sentence on Mr. Curtin when it imposed a sentence of sixty months' imprisonment which was the result of a substantial upward variance from the advisory sentencing range where neither the nature of offense nor the individual characteristics of Mr. Curtin warranted an upward departure and where the district court improperly focused on prior bad acts that were more than a decade old and were never prosecuted while ignoring Mr. Curtin's personal characteristics as a 78 year-old first time offender with substantial physical and mental health issues ........................................................................ 51

CONCLUSION ........................................................................ 60

CERTIFICATE OF COMPLIANCE ........................................ 61

CERTIFICATE OF SERVICE ............................................... 62

ii

# TABLE OF CITATIONS

**Cases:**

*Clemens v. U.S. District Court for the Central District of California,*

    428 F.3d 1175 (9th Cir. 2005) ........................................................ 44

*Curtin v. Florida State Court System,*

    20-cv-14128-JEM/Maynard (S.D.Fla. 2020) .......................... *passim*

\**Elonis v. United States,*

    135 S. Ct. 2001 (2015) ................................................................... 31

*Gall v. United States,*

    552 U.S. 38, 128 S. Ct. 586 (2007) ................................................ 16

\**In Re Moody,*

    755 F.3d 891 (11th Cir. 2014) .......................... 41, 42, 43, 45, 46, 47

*In Re Nettles,*

    394 F.3d 1001 (7th Cir. 2005) ........................................................ 44

\**Jackson v. Indiana,*

    406 U.S. 715 (1972) ...................................................... 33, 34, 39, 40

*Koon v. United States,*

    116 S. Ct. 2035 (1996) ............................................................. 15, 39

*Lifeberg v. Health Services Acquisition Corp.,*

    108 S. Ct. 2194, 2205 (1988) .......................................................... 41

*Molina-Martinez v. United States,*

    136 S. Ct. 1338 (2016) .................................................................... 47

*Rosales-Mireles v. United States,*

    138 S. Ct. 1897 (2018) .................................................................... 48

*United States v. Atkinson,*

    297 U.S. 157, 56 S. Ct. 391, 80 L. Ed. 555 (1936).......................... 45

*United States v. Bailey,*

    175 F.3d 966 (11th Cir. 1999) ........................................................ 44

*United States v. Baker,*

    807 F.2d 1315 (6th Cir. 1986) ........................................................ 36

*United States v. Berger,*

    375 F.3d 1223 (11th Cir. 2004) ...................................................... 44

*United States v. Castaneda,*

    997 F.3d 1318 (11th Cir. 2021) ................................................ 15, 16

*United States v. Cooper,*

    203 F.3d 1279 (11th Cir. 2000) ................................................ 15, 22

\*_United States v. Donofrio_,

    986 F.3d 1301 (11th Cir. 1990) ................................................ 34, 35

_United States v. Hoffer_,

    129 F.3d 1196 (11th Cir. 1997) ................................................ 16, 39

_United States v. Irey_,

    612 F.3d 1160 (11th Cir. 2010) (_en banc_)................................ 53, 59

_United States v. Kelly_,

    888 F.3d 732 (11th Cir. 1989) .......................................... 22, 33, 41

_United States v. Knowles_,

    66 F.3d 1146 (11th Cir. 1995) ........................................................ 45

_United States v. Magassouba_,

    544 F.2d 387 (2d Cir. 2008)........................................................... 37

_United States v. Olano_,

    507 U.S. 725, 113 S. Ct. 1770 (1993) ........................................... 45

_United States v. Patti_,

    337 F.3d 1317 (11th Cir. 2003) ..................................................... 42

_United States v. Pugh_,

    515 F.3d 1179 (11th Cir. 2008) ..................................................... 52

*United States v. Russell*,

    322 Fed. App'x 920 (11th Cir. April 13, 2009) ......................... 49, 51

*United States v. Scrushy*,

    721 F.3d 1288 (11th Cir. 2013) ....................................................... 41

*United States v. Shawar*,

    865 F.2d 856 (7th Cir. 1989) .......................................................... 35

*United States v. Vazquez*,

    53 F.3d 1216 (11th Cir. 1995) ........................................................ 45

*United States v. Williams*,

    435 F.3d 1350 (11th Cir. 2006) ...................................................... 16

*United States v. Willner*,

    795 F.3d 1297 (11th Cir. 2015) ................................................. 22, 33

\*United States v. Wright-Darrisaw*,

    781 F.3d 35 (2d Cir. 2015)............................................................. 50

**Statutory and Other Authority**

18 U.S.C. § 875(c) ..................................................................................... 31

18 U.S.C. § 876(c) ................................................................... 4, 10, 22, 30

18 U.S.C. § 115(a)(1)(B)........................................................ 4, 10, 23, 30

18 U.S.C. § 3231 ......................................................................................... x

18 U.S.C. § 3551 ................................................................. 14, 58

18 U.S.C. § 3553 ................................................................. 14, 58

18 U.S.C. § 3553(a) ............................................... 16, 52, 53, 59

18 U.S.C. § 3553(a)(1) ................................................... 52, 56

18. U.S.C. § 3553(a)(2) ........................................................ 52

18 U.S.C. § 3742 .................................................................... x

18 U.S.C. § 4241 ....................................................... 18, 36, 40

18 U.S.C. §§ 4241-4247 ....................................................... 34

18 U.S.C. § 4241(a) .............................................................. 34

18 U.S.C. § 4241(b) .............................................................. 34

18 U.S.C. § 4241(c) .............................................................. 34

18 U.S.C. § 4241(d) ............................................ 11, 35, 37, 39, 44

18 U.S.C. § 4241(d)(1) .......................................................... 37

28 U.S.C. § 455 ..................................................................... 42

28 U.S.C. § 455(a) ..................................................... 41, 46, 47

28 U.S.C. § 1291 ..................................................................... x

42 U.S.C. § 1983 ................................................................... 32

U.S.S.G. 2A6.1(b)(6) .......................................... 2, 13, 48, 50, 51

The Insanity Defense Reform Act of 1984 ("IDRA"),

    Pub. L. 98-473, 98 Stat. 2057 (1984)............................................. 34

*My Lord and I* Lyrics, by Heritage Singers, Lyrics on Demand,

    https://www.lyricsondemand.com/h/heritagesingerslyrics/

    mylordandilyrics.html............................................................. 28, 29

## STATEMENT REGARDING ORAL ARGUMENT

This appeal raises substantial and important issues regarding whether a 78 year-old physically and mentally infirmed frequent litigant made an actual threat to a magistrate judge in objections to that magistrate judge's report and recommendation that his civil suit be dismissed; whether a district court judge should *sua sponte* recuse the court where the government has charged a defendant with making a threat of death against a judge of that Court; whether criminal charges against an accused should be dismissed for a violation of due process where the Attorney General has failed to evaluate and treat an individual initially found to be incompetent to stand trial within the mandatory time period mandated by Congress; and whether a district court should reduce an offense level by four levels where a threat lacked any deliberation. Accordingly, appellant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision making process.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The appeal was timely filed on February 16, 2022, from the final judgment and commitment order entered on February 15, 2022, that disposes of all claims between the parties to this cause.

## STATEMENT OF THE ISSUES

I.     Whether the Government failed to prove beyond a reasonable doubt that Mr. Curtin intended to issue a real threat against Judge Maynard or that Mr. Curtin knew that his communications would be viewed as a threat by Judge Maynard?

II.    Whether the district court erred when it denied Mr. Curtin's motion to dismiss the superseding indictment where Mr. Curtin was detained for evaluation and treatment by the Attorney General beyond the term of hospitalization authorized by statute?

III.   Whether the District Court for the Southern District of Florida erred as a matter of law when it failed to *sua sponte* recuse itself from deciding any material issues in Mr. Curtin's prosecution for threatening a Southern District of Florida federal magistrate judge where the District Court for the Southern District of Florida decided substantive issues such

as bond, competency and motions to dismiss the indictment against Mr. Curtin while Mr. Curtin remained imprisoned for almost a year before the prosecution was transferred to the Middle District of Florida?

IV.  Whether the district court imposed a procedurally unreasonable sentence when it failed to reduce the offense level by four levels pursuant to U.S.S.G. 2A6.1(b)(6) where Mr. Curtin's offense involved a single instance involving little or no deliberation?

V.  Whether the district court imposed a substantively unreasonable sentence on Mr. Curtin when it imposed a sentence of sixty months' imprisonment which was the result of a substantial upward variance from the advisory sentencing range where neither the nature of offense nor the individual characteristics of Mr. Curtin warranted an upward departure and where the district court improperly focused on prior bad acts that were more than a

decade old and were never prosecuted while ignoring Mr. Curtin's personal characteristics as a 78 year-old first time offender with substantial physical and mental health issues?

## STATEMENT OF THE CASE

The appellant, Mr. Lawrence F. Curtin, was the defendant in the district court and will be referred to by name. The appellee, United States of America, will be referred to as the government. The record will be noted by reference to the volume number, document number, and page number of the Record on Appeal as prescribed by the rules of this Court.

The Appellant, Mr. Curtin, is currently incarcerated serving a sixty-month term of imprisonment.

## COURSE OF PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT

A federal grand jury in the Southern District of Florida charged Mr. Lawrence Curtin, in a two-count superseding indictment, with one count of mailing a threatening communication in violation of 18 U.S.C. § 876(c) (count one) and one count of threatening to assault and murder a United States judge in violation of 18 U.S.C. § 115(a)(1)(B) (count two). (DE 65). The charges accused Mr. Curtin of threatening a Federal Magistrate Judge from the Southern District of Florida. Following treatment at a Federal Bureau of Prisons medical facility, Mr. Curtin was eventually deemed competent to stand trial. His case was subsequently transferred to a judge in the Middle District of Florida. Following a jury trial, Mr.

4

Curtin was convicted on both counts.  The district court sentenced Mr. Curtin to a 60-month term of imprisonment.

## STATEMENT OF FACTS

Mr. Lawrence F. Curtin is a seventy-nine year-old native of Cambridge, Massachusetts.  Presentence Report ("PSR") at ¶ 41.  Mr. Curtin suffers from a host of medical conditions.  Specifically, Mr. Curtin suffers from hypertension, heart disease, Type 2 diabetes, an umbilical hernia, and Mr. Curtin has a defibrillator surgically implanted.  PSR ¶ 55.  Mr. Curtin also suffers from Cancer having been diagnosed with carcinoma cells on various parts of his body.  *Id*.  Mr. Curtin's left hand has been rendered useless and is permanently stuck in a claw like position.  *Id*.  In addition, Mr. Curtin suffers from mental health issues.  Mr. Curtin has been diagnosed with Schizophrenia and other psychotic disorders.  PSR ¶ 56.  In fact, in the presentence report, the probation officer highlighted the fact that Mr. Curtin's "untreated mental health diagnosis" provided a factor that might warrant a sentence below the advisory sentencing range.  PSR ¶ 84.

Mr. Curtin was injured in a traffic accident on September 7, 2012, when he swerved to avoid hitting a truck that had just entered interstate

95 from a construction site.[1]  In October 2013, Mr. Curtin filed a civil suit against the truck owner and others seeking compensation for his personal injuries.  St. Lucie County Circuit Judge Janet Croom presided over the case.  On April 12, 2026, Judge Croom entered summary judgment against Mr. Curtin.  That decision was affirmed on appeal in state court.  Mr. Curtin also filed two civil law suits in federal court, nos. 16-cv-14427 and 17-cv-14403, challenging that state civil case.

Mr. Curtin also complained to the Governor of Florida and to the Florida Judicial Qualification Committee ("JQC") regarding Judge Croom's handling of his civil suit.  In a letter to the JQC dated June 23, 2018, Mr. Curtin complained about the serious injuries he and his wife sustained, and he claimed that Judge Croom's rulings violated his constitutional rights.  Mr. Curtain also cited Biblical law of an "eye for an eye" and vowed to "stop Croom."  The JQC viewed that statement as a threat against Judge Croom and referred Mr. Curtin for prosecution by state authorities.

---

[1] The background facts preceding the prosecution in the underlying criminal case are taken from the report and recommendation filed by Magistrate Maynard (DE 13) in Mr. Curtin's federal civil suit, 20-cv-14128-JEM.

Mr. Curtin was in fact prosecuted in state court for threating Judge Croom.  However, the state court eventually found that Mr. Curtin was not competent to stand trial and the state court dismissed the charges against Mr. Curtin.

Mr. Curtin filed another civil suit in federal court challenging the state court decisions, *Curtin v. Florida State Court System*, 20-cv-14128-JEM/Maynard (S.D.Fla. 2020).  This time, Mr., Curtin added the whole of the state judiciary and claimed that the actions of the judiciary were tantamount to an organized crime conspiracy.  Mr. Curtin represented himself in this lawsuit and was considered a pro se litigant.  Mr.  Curtin had filed a handful of previous federal lawsuits, all of them as a pro se litigant.  Because Mr. Curtin resides in Fort Pierce, Florida, his federal legal filings are sent to the Fort Pierce division of the Southern District of Florida.  There is only one federal magistrate judge in the Fort Pierce division, and so all of Mr. Curtin's legal filings in federal court went to that single magistrate judge, Judge Maynard.  And in all of Mr. Curtin's previous federal cases, that single magistrate judge had recommended that the lawsuit be dismissed and that recommendation had been adopted by the district court judge assigned to the case.  Similarly, in

case 20-cv-14128, the case was referred to that same magistrate judge, Judge Maynard, and Judge Maynard issued a report recommending that the current civil case field by Mr. Curtin be likewise dismissed. *Curtin v. Florida State Court System*, 20-cv-14128-JEM/Maynard (S.D.Fla. 2020), (DE 13).

As required by local rules, Mr. Curtin filed objections to the Magistrate Judge's report and recommendation. *Curtin v. Florida State Court System*, 20-cv-14128-JEM/Maynard (S.D.Fla. 2020), (DE 14), (Gov't. Exh. 1). The contents of those objections form the basis for the underlying criminal prosecution. Mr. Curtin attempted to file the objections in person at the clerk's office in the Fort Pierce federal courthouse, but was unable and subsequently mailed the objections to the clerk's office.

In the objections to the Magistrate Judge's Report and Recommendation, Mr. Curtin objected to the case law cited by the Magistrate Judge arguing that his claim is RICO and Honest Services Fraud and that those cases do not apply to his law suit. *Curtin v. Florida State Court System*, 20-cv-14128-JEM/Maynard (S.D.Fla. 2020), (DE 14), (Gov't. Exh. 1). Mr. Curtin also objected to application of the abstention

doctrine since his state prosecution had been dismissed and he denies

trying to have the federal court act as a super appellate state court.  Mr.

Curtin then turns his attention to the underlying basis for his state

criminal case – the threat against Judge Croom:

> WHERE IN MY JUNE 23, 2018 LETTER DO I THREATEN
> DEATH OR BODILY HARM TO CROOM? NO WHERE!
>
> MY JUNE 23, 2018 LETTER AS YOU WILL NOTE IS
> ADDDRESSED TO THE JUDICIAL QUALIFICATIONS
> COMMISSION (JQC).  YOU DO NOT ADDRESS A LETTER
> TO THE JQC TO THREATEN A JUDGES PERSON.  YOU
> ADDRESS IT TO THE JQC TO THREATEN A JUDGES
> POSITION.  MAYNARD IS UNABLE TO UNDERSTAND
> THIS.
>
> I ALSO NAMED MAYNARD AS AN ADDIER AND
> ABETTER [sic].  MAYNARD KNEW ABOUT THE
> DEFENDANT'S REFUSING MY HEART MEDICATION IN
> AN EFFORT TO KILL ME YET **SHE COVERED IT UP.**
>
> https://www.youtube.com/watch?v=a2vUNuX5Hgl
>
> IT IS OBVIOUS FROM THE TOTALITY OF WORDS IN THE
> SONG INCLUDING ITS TITLE I AM THREATENING
> MAYNARD WITH DEATH AND BODILY HARM.  ALSO BY
> HOLDING ONTO THE HAND OF THE PREACHER OF
> COLOR THAT I AM THREATENING MAYNARD WHO IS A
> WOMAN OF COLOR WITH DEATH.
>
> "WITH LIBERTY AND JUSTICE FOR ALL"

(20-cv-14128:DE 14).  Mr. Curtin then dated and signed the objections

and noted his full name, address and social security number.

Magistrate Judge Maynard alerted the United States Marshal Service regarding the filing as a threat.  Subsequently, a federal grand jury in the Southern District of Florida charged Mr. Lawrence Curtin, in a two-count superseding indictment, with one count of mailing a threatening communication in violation of 18 U.S.C. § 876(c) (count one) and one count of threatening to assault and murder a United States judge in violation of 18 U.S.C. § 115(a)(1)(B) (count two).  (DE 65).  The charges accused Mr. Curtin of threatening a Federal Magistrate Judge from the Southern District of Florida.    Despite the nature of the charges, the prosecution against Mr. Curtin remained in the Southern District of Florida.

Following Mr. Curtin's arrest, a Magistrate Judge in the Southern District of Florida ordered that Mr. Curtin be detained pre-trial on August 31, 2020.  (DE 5,6).  At the detention hearing, issues regarding Mr. Curtin's competency arose.  *Id*.  On September 14, 2020, the parties filed a joint motion for a competency evaluation.  (DE 8).  While detained, Mr. Curtin contracted Covid 19.  Due to his age and his physical and mental health issues, counsel for Mr. Curtin filed a renewed motion for

bond.  (DE 14).  The same Magistrate Judge from the Southern District of Florida denied the motion for bond.  (DE 18).

On November 24, 2020, the same Magistrate Judge from the Southern District of Florida found Mr. Curtin incompetent to stand trial and ordered Mr. Curtin committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d).  (DE 24).  However, it was not until four months later, March 22, 2021, that Mr. Curtin was actually transferred to a medical facility, FMC Devens, for treatment as ordered.

On July 23, 2021, four months after Mr. Curtin had been finally transferred to a medical facility for treatment, and eight months after he had been committed to the custody of the Attorney General for treatment via a judicial order, counsel for Mr. Curtin filed a motion to dismiss the charges against Mr. Curtin based on the fact that he had been detained beyond the statutory four-month limit expressly provided by section 4241(d).  (DE 75).  On August 6, 2021, a district judge from the Southern District of Florida denied the motion to dismiss and ordered Mr. Curtin's return to the Federal Detention Center in Miami.  (DE 79).

In fact, Mr. Curtin was not returned to Miami forthwith as ordered by the Court.  On September 14, 2021, the district court held a status

conference on Mr. Curtin's competency. (DE 90, 241). Mr. Curtin was not brought to court that day because of a medical issue. However, counsel for the government noted that she had not received the report regarding Mr. Curtin's competency until the day before, September 13, 2021, and had forwarded a copy of the report to counsel for Mr. Curtin. Thus, nearly six months after Mr. Curtin had been finally transferred to a medical facility for treatment, nearly ten months after he had been committed to the custody of the Attorney General for treatment via a judicial order, and nearly two months since he was ordered to be returned to the Southern District of Florida forthwith, Mr. Curtin was returned to the Southern District of Florida and counsel for Mr. Curtin and the government were finally provided with the medical report regarding Mr. Curtin's competency. (DE 243).

At the status conference, the parties acknowledged that Mr. Curtin was now competent to stand trial and counsel for Mr. Curtin informed the Court that Mr. Curtin would proceed to trial represented by counsel. (DE 243). Counsel for the government notified the court that Magistrate Judge Maynard would be testifying at the trial. There was then a request

that the Court should recuse itself.  (DE 95).  The case was transferred to the Middle District of Florida.  (DE 97).

Following a jury trial in the Middle District of Florida, Mr. Curtin was convicted on both counts of the indictment.  (DE 197).  Prior to sentencing, the government filed objections to the presentence report in which they included materials from the United States Marshals Service. (DE 206).  Specifically, the government referenced a March 10, 2005, letter from Mr. Curtin to a district judge in the Eastern District of Louisiana, an April 22, 2005 letter from Mr. Curtin to two district judges in the Southern District of Florida, and a December 18, 2007 letter from Mr. Curtin to one of those district judges in the Southern District of Florida.  *Id*.  Counsel for Mr. Curtin also filed objections arguing that the offense level should be reduced by four levels pursuant to U.S.S.G. § 2A6.1(b)(6), the offense involved a single instance evidencing little or no deliberation.  (DE 207).

At sentencing, the district court denied Mr. Curtin's objections and adopted the presentence report calculation of a final offense level of 18 and criminal history of I based on zero criminal history points.  That yielded an advisory range of 27-33 months.  Counsel for Mr. Curtin

13

argued that Mr. Curtin's age, his physical and mental health problems, his lack of prior criminal history and what he endured during his imprisonment awaiting competency evaluation and treatment, warranted a downward variance to 18 months, which he had already served. The government argued that Mr. Curtin's letters from more than a decade earlier showed a pattern that required a sentence at the high-end of the advisory sentencing range – 33 months. The district court rejected both requests and instead varied upward almost double the top of the advisory sentencing range and imposed a sentence of 60 months. Specifically, the district court concluded as follows:

> The Court has heard from the defendant and from defense, and the parties made statements in their behalf or waived the opportunity to present any further evidence. And pursuant to Title 18 United States Code 3551 and 3553, it's the judgment of the Court that Mr. Curtin is committed to the Bureau of Prisons for an upward variance of 60 months. The reason why is a pattern. When I get letters that we're going to send a microwave machine or ask permission to blow the brains of out of Chief Judge King ad that we want sweat, perspiration to poor [sic] fro Judge Croom's armpit, I don't know why it is that we keep sending letters to judges. We have an ongoing, disturbing conversation in writing with Judge Bert Jordan – Adalberto Jordan. I'm so bad at that. This is a pattern, and the pattern escalated and it escalated, and I wasn't really impressed with this tincture, if that's the word, this piece of reference to race in this threat. You know, this is an older white gentleman threatening a young African-American female. And I guess there are some reason to comment on

14

race, but from the victim's point of view, there's a little bit of a history in Florida, and that little reference was gratuitous and added to what was a clear threat. So the upper variance is because of the pattern, the need to respect the law, which is grossly disrespected, and the need for public safety. And he says, well, he hasn't hurt anybody. Well, yes, these threats are hurtful. Someone gets a letter where someone is suggesting we are going to blow their brains out or I'm going to threaten Magistrate Judge Smith in Orlando with bodily injury and death, they're very hurtful. Thank God it hasn't escalated further. So it's public safety and the repeated pattern that I see over a course of many years, almost to the point where marshals beat the path out there to do a threat assessment every time one of these letters comes.

(DE 237:46-47). Mr. Curtin timely appealed.

## STANDARDS OF REVIEW

When a defendant challenges the sufficiency of evidence supporting a conviction, the evidence presented at trial must be viewed in the light most favorable to the government "to determine whether a reasonable jury, choosing among reasonable constructions of the evidence, could have found that the defendant was guilty beyond a reasonable doubt." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000).

Generally, this Court reviews a district court's denial of a motion to dismiss an indictment for an abuse of discretion. *United States v. Castaneda*, 997 F.3d 1318, 1325 (11th Cir. 2021). "A district court by definition abuses its discretion when it makes an error of law." *Koon v.*

*United States*, 116 S. Ct. 2035, 2047 (1996); *accord United States v. Hoffer*, 129 F.3d 1196, 1200 (11th Cir. 1997).   Whether a criminal defendant's due process rights have been violated is a question of law reviewed *de novo*.   *Castaneda*, 997 F.3d at 1325.

In reviewing a criminal sentence, this Court will first review whether the district court properly applied the Sentencing Guidelines, then whether the sentence is reasonable in the context of the factors outlined in 18 U.S.C. § 3553(a).  *United States v. Williams*, 435 F.3d 1350, 1353 (11th Cir. 2006).   This Court reviews the reasonableness of a sentence under an abuse of discretion standard based on a totality of the circumstances.  *See Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 596-597 (2007).

## SUMMARY OF THE ARGUMENT

**One**.  A criminal defendant must know the facts that make his conduct fit the definition of the offense, even if he does not know that those facts give rise to a crime.  A federal criminal offense charging the communication of a threat to injure requires proof that the accused intended to issue a threat or know that his communications would be viewed as a threat.  Here, Mr. Lawrence Curtin, a 78 year-old frequent litigant, filed objections to a report and recommendation in which a federal magistrate judge recommended that Mr. Curtin's federal civil suit be dismissed. In his objections, in which he disputed that he had threatened a state court judge, Mr. Curtin provided a link to a clip from a movie that he directed and starred in.   Following the link, Mr. Curtin stated that: "it is obvious from the totality of words in the song including its title I am threatening Maynard with death and bodily harm.  Also by holding onto the hand of the preacher of color that I am threatening Maynard who is a woman of color with death."  In fact, nothing about the song title or lyrics or anything depicted in the movie clip is in any way threatening.  Read in context, the statement regarding the magistrate judge cannot be seen as proving beyond a reasonable doubt that Mr.

Curtin intended to issue a threat or know that his communications would be viewed as a threat.

**Two**.   Federal statute 18 U.S.C. § 4241 provides for a specific procedure where an accused is found to be incompetent to stand trial. That strict procedure provides for an order of detention to the custody of the Attorney General for a period not to exceed four months for evaluation and treatment. Here, Mr. Curtin was clearly detained beyond that four-month limitation.   Mr. Curtin spent nearly six months in a medical facility, and  Mr. Curtin was detained for nearly ten months total after he had been committed to the custody of the Attorney General for treatment via a judicial order.   Given the clear violation of Mr. Curtin's due process rights, the district court erred as a matter of law when it denied his motion to dismiss the indictment against him for a violation of his due process rights.

**Three**.   Federal law requires that any judge of the United States **shall** disqualify herself in any proceeding in which her impartiality might reasonably be questioned.   Here, Mr. Curtin was charged with threatening a federal magistrate judge in the Southern District of Florida with death.   Given that a colleague was the intended victim of the threat,

the entire judiciary of the Southern District of Florid should have *sua sponte* disqualified itself and the prosecution should have immediately been transferred to a judge in another federal district. Instead, Mr. Curtin's prosecution remained in the Southern District of Florida for approximately a year. During that time, judges from the Southern District of Florida ruled on substantive and dispositive issues such as detention, competency to stand trial, bond and a dispositive motion to dismiss the indictment. Because those judges should have *sua sponte* disqualified themselves and never ruled on those substantive and dispositive motions, Mr. Curtin's convictions and sentence should be vacated.

**Four**. The district court imposed a procedurally unreasonable sentence when it misapplied the Sentencing Guidelines. Specifically, the district court should have reduced the offense level by four levels under a provision that requires the reduction in cases of a threat where the offense involved a single instance evidencing little or no deliberation. Here, there was no evidence of planning or some effort to carry out the threat. Federal courts have used that as the standard for determining the type of deliberation required. Because there was no such deliberation

here, the district court erred when it failed to lower the offense level by four levels.

**Five**.   The district court imposed a substantively unreasonable sentence where the court varied upward substantially by improperly focusing on one factor regarding conduct by Mr. Curtin that was more than a decade old and that did not result in a criminal investigation let alone prosecution.   In addition, the district court failed to take into account Mr. Curtin's individual characteristics as a 78 year-old man with physical and mental health issues with no prior criminal history.

## ARGUMENT AND CITATIONS OF AUTHORITY

Mr. Lawrence Curtin, a seventy-nine year old man with no prior criminal convictions was charged with threatening a Magistrate Judge in the Southern District of Florida with death. Yet, his prosecution stayed in the Southern District of Florida for a year where judges in that district made dispositive rulings in his case while his competency was determined. He was subsequently tried and convicted by a jury in the Middle District of Florida. The basis of the charges against Mr. Curtin stem from objections he filed in response to a Magistrate Judge's report and recommendation that his civil suit be dismissed. The objections, filed with the clerk's office, included a statement that Mr. Curtin was threatening the magistrate judge with death and bodily harm. But that statement referenced a video link provided by Mr. Curtin and made it clear that the apparent threat needed to be read in context with the video and its content. When the statement is in fact read in context with the video and its content, it is clear that Mr. Curtin did not intend to actually threaten the magistrate judge or know that his communications would be viewed as a threat.

21

I.   **The Government failed to prove beyond a reasonable doubt that Mr. Curtin intended to issue a real threat against Judge Maynard or that Mr. Curtin knew that his communications would be viewed as a threat by Judge Maynard.**

When a defendant challenges the sufficiency of evidence supporting a conviction, the evidence presented at trial must be viewed in the light most favorable to the government "to determine whether a reasonable jury, choosing among reasonable constructions of the evidence, could have found that the defendant was guilty beyond a reasonable doubt." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000). "If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." *United States v. Willner*, 795 F.3d 1297, 1307 (11th Cir. 2015) (quoting *United States v. Kelly*, 888 F.3d 732, 740 (11th Cir. 1989)).

Here, Mr. Curtin was charged in a two-count superseding indictment with one count of mailing a threatening communication in violation of 18 U.S.C. § 876(c) (count one) and one count of threatening to assault and murder a United States judge in violation of 18 U.S.C. §

22

115(a)(1)(B) (count two). (DE 65). Both charges arose from the same actions committed by Mr. Curtin, and both charges fail for the same reason that the government failed to prove beyond a reasonable doubt that Mr. Curtin intended to communicate an actual threat to Judge Maynard.

The facts underlying the two counts of the superseding indictment are undisputed. Mr. Curtin was injured in a traffic accident on September 7, 2012 when he swerved to avoid hitting a truck that had just entered interstate 95 from a construction site. In October 2013, Mr. Curtin filed a civil suit against the truck owner and others seeking compensation for his personal injuries. St. Lucie County Circuit Judge Janet Croom presided over the case. On April 12, 2026, Judge Croom entered summary judgement against Mr. Curtin. That decision was affirmed on appeal in state court. Mr. Curtin also filed two civil law suits in federal court, nos. 16-cv-14427 and 17-cv-14403, challenging that state civil case.

Mr. Curtin also complained to the Governor of Florida and to the Florida Judicial Qualification Committee ("JQC") regarding Judge Croom's handling of his civil suit. In a letter to the JQC dated June 23, 2018, Mr. Curtin complained about the serious injuries he and his wife

sustained, and he claimed that Judge Croom's rulings violated his constitutional rights. Mr. Curtin also cited Biblical law of an "eye for an eye" and vowed to "stop Croom." The JQC viewed that statement as a threat against Judge Croom and referred Mr. Curtin for prosecution by state authorities.

Mr. Curtin was in fact prosecuted in state court for threatening Judge Croom. However, the state court eventually found that Mr. Curtin was not competent to stand trial and the state court dismissed the charges against Mr. Curtin.

Mr. Curtin filed another civil suit in federal court challenging the state court decisions, 20-cv-14128-MARTINEZ. This time, Mr., Curtin added the whole of the state judiciary and claimed that the actions of the judiciary were tantamount to an organized crime conspiracy. Mr. Curtin represented himself in this lawsuit and was considered a pro se litigant. Mr. Curtin had filed a handful of previous federal lawsuits, all of them as a pro se litigant. Because Mr. Curtin resides in Fort Pierce, Florida, his federal legal filings are sent to the Fort Pierce division of the Southern District of Florida. There is only one federal magistrate judge in the Fort Pierce division, and so all of Mr. Curtin's legal filings in federal court

went to that single magistrate judge, Judge Maynard.  And in all of Mr. Curtin's previous federal cases, that single magistrate judge had recommended that the lawsuit be dismissed and that recommendation had been adopted by the district court judge assigned to the case. Similarly, in case 20-cv-14128, the case was referred to that same magistrate judge, Judge Maynard, and Judge Maynard issued a report recommending that the current civil case field by Mr. Curtin be likewise dismissed.

As required by local rules, Mr. Curtin filed objections to the Magistrate Judge's report and recommendation.  The contents of those objections form the basis for the underlying criminal prosecution.  Mr. Curtin attempted to file the objections in person at the clerk's office in the Fort Pierce federal courthouse, but was unable and subsequently mailed the objections to the clerk's office.

It should be noted that at the time that the objections were filed, Judge Maynard was aware that Mr. Curtin was a frequent litigator whose filings were often nonsensical and rarely made sense.  For example, in the case in which the objections were filed, he claimed that the entire judiciary in the state of Florida was actually an organized

criminal enterprise.  Judge Maynard was also aware of the fact that Mr. Curtin had been prosecuted in state court for threatening a state judge based on Mr. Curtin's statements to the state JQC regarding "an eye for an eye" and wanting to "stop" the state judge who ruled against him. Importantly, Judge Maynard was aware that Mr. Curtin had been found incompetent to stand trial and the state charges had been dismissed on that basis.

In the objections to the Magistrate Judge's Report and Recommendation, Mr. Curtin objected to the case law cited by the Magistrate Judge arguing that his claim is RICO and Honest Services Fraud and that those cases do not apply to his law suit.  Mr. Curtin also objected to application of the abstention doctrine since his state prosecution had been dismissed and he denies trying to have the federal court act as a super appellate state court.  Mr. Curtin then turns his attention to the underlying basis for his state criminal case – the threat against Judge Croom:

> WHERE IN MY JUNE 23, 2018 LETTER DO I THREATEN DEATH OR BODILY HARM TO CROOM? NO WHERE!
>
> MY JUNE 23, 2018 LETTER AS YOU WILL NOTE IS ADDDRESSED TO THE JUDICIAL QUALIFICATIONS COMMISSION (JQC).  YOU DO NOT ADDRESS A LETTER

26

TO THE JQC TO THREATEN A JUDGES PERSON. YOU ADDRESS IT TO THE JQC TO THREATEN A JUDGES POSITION. MAYNARD IS UNABLE TO UNDERSTAND THIS.

I ALSO NAMED MAYNARD AS AN ADDIER AND ABETTER [sic]. MAYNARD KNEW ABOUT THE DEFENDANT'S REFUSING MY HEART MEDICATION IN AN EFFORT TO KILL ME YET **SHE COVERED IT UP.**

https://www.youtube.com/watch?v=a2vUNuX5Hgl

IT IS OBVIOUS FROM THE TOTALITY OF WORDS IN THE SONG INCLUDING ITS TITLE I AM THREATENING MAYNARD WITH DEATH AND BODILY HARM. ALSO BY HOLDING ONTO THE HAND OF THE PREACHER OF COLOR THAT I AM THREATENING MAYNARD WHO IS A WOMAN OF COLOR WITH DEATH.

"WITH LIBERTY AND JUSTICE FOR ALL"

(20-cv-14128:DE 14). Mr. Curtin then dated and signed the objections and noted his full name, address and social security number.

Mr. Curtin's exact words and their context are important. Mr. Curtin did write, "I am threatening Maynard with death and bodily harm," and "I am threatening Maynard . . . with death." But each statement was tied to Youtube link provided my Mr. Curtin. That link was to a clip from the 1988 movie "One Minute to Midnight" which was directed by Mr. Curtin and starred Mr. Curtin. *See* One Minute to Midnight, IMDB.com, available at

27

https://www.imdb.com/title/tt0180887/?ref_=fn_al_tt_3 (last visited June 29, 2022). The specific scene from that movie linked by Mr. Curtin was a scene in which Mr. Curtin's character and his family are attending a church service. The choir starts singing the spiritual song "My Lord and I" as Mr. Curtin's character and his family stand and clap mostly to the rhythm of the song. At the end of the song, Mr. Curtin's character walks up the aisle, reaches up to the elevated pulpit and shakes the minister's hand. The minister, the choir and most of the congregation is African-American. The lyrics to "My Lord and I" are as follows:

> Well we're gonna walk this road to Glory Children
> My Lord and I
> Yeah we're gonna walk and tell the story Children
> My Lord and I
> When I come to the river wide
> Blessed Lord is gonna calm the tide
> We're gonna walk this road to Glory Children
> My Lord and I
> (Repeat)
>
> We're gonna walk this road to Glory Children
> My Lord and I
> Yeah we're gonna walk and tell the story Children
> My Lord and I
> Rain or shine, snow or sleet
> Blessed Lord, guide my feet
> We're gonna walk this road to glory Children
> My Lord and I
>
> Well such is my consolation, my burdens out of the way

The Holy Spirit guides me as I travel day by day
When I pull into his station, I get a full supply
Yeah we're gonna walk the road to glory Children
My Lord and I
We're gonna walk and talk all the way to glory
Gonna walk and tell this blessed old story
Walk and talk all the way to glory
My Lord and I
When I comes to the river, wide
The blessed Lord is gonna calm the tide
We're gonna walk this road to glory Children
My Lord and I
(Repeat)

*My Lord and I* Lyrics, by Heritage Singers, Lyrics on Demand, available

at

https://www.lyricsondemand.com/h/heritagesingerslyrics/mylordandilyri

cs.html

(last visited July 11, 2022).

Nothing about the title of the song or the words in the lyrics even

remotely connotes any kind of threat much less a threat of "death and

bodily harm." If anything, the title, the words in the lyrics and the way

the song is performed in the clip is exactly the opposite of a threat. Also,

the part of the clip where Mr. Curtin's character walks forward, reaches

up and shakes the minister's hand is in no way threatening. Again, if

anything, those actions appear to be the exact opposite of a threat, and

certainly cannot reasonably be seen as a threat of death.  In that context,

then, what is a reasonable reading of Mr. Curtin's words:

> It is obvious from the totality of words in the song including its title I am threatening Maynard with death and bodily harm.  Also by holding onto the hand of the preacher of color that I am threatening Maynard who is a woman of color with death.

Reading the statement in its entirety with the words and title to the song

in the clip and the actions of Mr. Curtin's character in the clip, it is clear

that there was no true threat.

Mr. Curtin was convicted of two separate federal offenses.  Section

876(c) of Title 18 makes it a crime to:

> knowingly [ ] deposit[] or cause[] to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another.

18 U.S.C.  § 876(c). Section 115(a)(1) of Title 18 makes it a crime to:

> Threaten[], assault, kidnap, or murder . . .  a United States judge . . . with intent to impede, intimidate, or interfere  such . . . judge . . . or with intent to retaliate against such . . . judge . . . on account of performance of official duties.

18 U.S.C. § 115(a)(1)(B).

As the Supreme Court has stressed, a criminal "defendant

generally must know the facts that make his conduct fit the definition of

30

the offense, even if he does not know that those facts give rise to a crime." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015). In *Elonis*, in the context of another federal statute that requires "a threat to injure," § 875(c), the Supreme Court held that the "threat to injure" in § 875 requires proof that the accused intended to issue a threat or know that his communications would be viewed as a threat. *Elonis*, 135 S. Ct. at 2011-2012. That same standard applies here.

Here, viewing Mr. Curtin's full statement in context leads to the inevitable conclusion that Mr. Curtin did not intend the statement to be a threat and that he did not know the statement would be viewed as a threat. To start, Mr. Curtin's statement was not an isolated statement mailed or sent directly to Judge Maynard. Rather, Mr. Curtin's statement was part of his objections that he was required to file to Judge Maynard's report and recommendation in his civil suit, case no. 20-cv-14128. Mr. Curtin attempted to file those objections in person at the Fort Pierce federal courthouse, but he was unable to file them in person due to limited hours for the clerk's office at the courthouse. He subsequently mailed them to the clerk's office.

31

The objections filed by Mr. Curtin had the proper legal heading, case number and were properly and prominently labeled "Objection to Maynard Report and Recommendation."  Mr. Curtin notes legal objections to application of 42 U.S.C. § 1983 to his civil suit.  Mr. Curtin also makes a legal argument that the magistrate judge failed to properly analyze his civil suit under federal R.I.C.O. laws and as an "Honest Services Fraud Claim."  Mr. Curtin also noted factual objections regarding the pendency of the state criminal action and the legal application of abstention doctrine based on that factual determination.

Mr. Curtin then noted his objection to his having threatened the state judge with death or bodily harm. Mr. Curtin makes the important distinction that his letter was addressed to the JQC and thus cannot be seen as a personal threat to the judge.  It is at that point in his objections that Mr. Curtin provided the link to the clip from his movie and stated:

> It is obvious from the totality of words in the song including its title I am threatening Maynard with death and bodily harm.  Also by holding onto the hand of the preacher of color that I am threatening Maynard who is a woman of color with death.

He then signed the objections and noted his full name, correct address and telephone number.

Given that complete context, including the words and title to the song in the clip, no reasonable factfinder could have found beyond a reasonable doubt that Mr. Curtin intended the statement to be a threat or that Mr. Curtin knew that the statement would be viewed as a threat. Because, even when viewed in the Government's favor, the Government failed to provide evidence "from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." *See Willner*, 795 F.3d at 1307; *Kelly*, 888 F.3d at 740.

II.    **The district court erred when it denied Mr. Curtin's motion to dismiss the superseding indictment where Mr. Curtin was detained for evaluation and treatment by the Attorney General beyond the term of hospitalization authorized by statute**.

In 1972, the Supreme Court made it clear that a criminal defendant who may not be competent to stand trial cannot be held more than the reasonable period of time necessary to determine whether the accused is competent or "whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).  "[D]ue process requires that the nature and

duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.*

In 1984, those due process concerns were codified into federal law when Congress passed The Insanity Defense Reform Act of 1984 ("IDRA"), Pub. L. 98-473, 98 Stat. 2057 (1984), 18 U.S.C. §§ 4241-4247. The Act was passed in response to the Supreme Court's decision in *Jackson. See United States v. Donofrio*, 986 F.3d 1301, 1302 (11th Cir. 1990). As relevant here, that statute provides a procedure for raising the competency of a criminal to stand trial. Specifically, the statute provides that either counsel for the accused or counsel for the government can file a motion to determine the mental competency of a criminal defendant. 18 U.S.C. § 4241(a). The Court can then order an initial psychiatric examination and hold a hearing on the competency of the accused. 18 U.S.C. § 4241(b),(c). The statute then specifies as follows:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility –

(1) For such a reasonable period, **not to exceed four months**, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) For an additional reasonable period of time until ---

(A) His mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) The pending charges against him are disposed of according to law;

Whichever is earlier.

If at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceeding to go forward, the defendant is subject to the provisions of section 4246 and 4248.

18 U.S.C. § 4241(d) (emphasis added). This Court has long held that the language of the statute is mandatory. *Donofrio*, 896 F.3d at 1303 (agreeing with the holding of the Seventh Circuit in *United States v. Shawar*, 865 F.2d 856, 863 (7th Cir. 1989)). "The statute limits confinement to four months, whether more time would be reasonable or not." *Donofrio*, 896 F.3d at 1303. Section 4241(d) "requires that a determination as to the individual's mental condition be made within

four months, and that the individual cannot be held pursuant to section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time." *United States v. Baker*, 807 F.2d 1315, 1320 (6th Cir. 1986).

Here, Mr. Curtin was arrested by federal authorities on August 24, 2020. On September 15, 2020, counsel for Mr. Curtin and counsel for the government filed a joint motion for a competency evaluation under the IDRA. On November 24, 2020, a magistrate judge in the Southern District of Florida determined that Mr. Curtin was not competent to proceed and ordered Mr. Curtin committed to custody of the Attorney General for hospitalization "not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to proceed." (DE 24). However, it was not until four months later, March 22, 2021, that Mr. Curtin was actually transferred to a medical facility, FMC Devens, for treatment as ordered.

On July 23, 2021, four months after Mr. Curtin had been finally transferred to a medical facility for treatment, and eight months after he had been committed to the custody of the Attorney General for treatment

via a judicial order, counsel for Mr. Curtin filed a motion to dismiss the charges against Mr. Curtin based on the fact that he had been detained beyond the statutory four-month limit expressly provided by section 4241(d). On August 6, 2021, a district judge from the Southern District of Florida denied the motion to dismiss. (DE 79). The district court agreed with Mr. Curtin that the duration of his confinement exceeded the term authorized in section 4241(d). Citing the Second Circuit's holding in *United States v. Magassouba*, 544 F.2d 387, 412-13 (2d Cir. 2008), that "section 4241(d)(1) confinement is limited not only as to time and purpose but also as to place," the district court concluded that "the Attorney General's continued confinement of [Mr. Curtin] at MNC Devens is without authority under section 4241(d)(1)." (DE 79:4).

The district court also rejected Mr. Curtin's argument that the four-month statutory limit for evaluation necessarily included a conclusion as to the result of the evaluation and communication of that result. Ultimately, the district court denied Mr. Curtin's motion and ordered Mr. Curtin's return to the Federal Detention Center in Miami. The court also ordered the government to provide weekly status reports until Mr. Curtin was returned to Miami, thus suggesting that the district court

anticipated a prolonged period before Mr. Curtin was returned to Miami. *Id.*

In fact, Mr. Curtin was not returned to Miami forthwith as ordered by the Court.  On September 14, 2021, the district court held a status conference on Mr. Curtin's competency.  (DE 241).  Mr. Curtin was not brought to court that day because of a medical issue.  However, counsel for the government noted that she had not received the report regarding Mr. Curtin's competency until the day before, September 13, 2021, and had forwarded a copy of the report to counsel for Mr. Curtin.  Thus, nearly six months after Mr. Curtin had been finally transferred to a medical facility for treatment, nearly ten months after he had been committed to the custody of the Attorney General for treatment via a judicial order, and nearly two months since he was ordered to be returned to the Southern District of Florida forthwith, Mr. Curtin was returned to the Southern District of Florida and counsel for Mr. Curtin and the government were finally provided with the medical report regarding Mr. Curtin's competency.  (DE 243).

In denying Mr. Curtin's motion to dismiss the indictment, the district court only counted the time from when Mr. Curtin arrived at

Devens and started treatment. However, the district court should have started counting the four months from November 24, 2020, when the magistrate judge ordered Mr. Curtin committed to custody of the Attorney General for hospitalization "not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to proceed." (DE 24). The view that the four-month limit starts when the accused is committed to the custody of the Attorney General for analysis and treatment is consistent with the plain language of section 4241(d) authorizing a limited detention of an accused for analysis and treatment. That view is also consistent with the due process analysis in *Jackson v. Indiana*. Because the district court made a legal error in failing to count the four months from the order committing Mr. Curtin to the Attorney General to when he was finally transferred to a medical facility for analysis and treatment, the decision to deny the motion to dismiss was necessarily an abuse of discretion. *See Koon v. United States*, 116 S. Ct. 2035, 2047 (1996); *United States v. Hoffer*, 129 F.3d 1196, 1200 (11th Cir. 1997).

But under any standard, the district court's denial of Mr. Curtin's motion to dismiss the indictment was reversible error. "At least, due

39

process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738. Section 4241's four-month limitation serves, at least, as a presumptive limit on what due process will allow. Here, Mr. Curtin was clearly detained beyond that four-month limitation. Mr. Curtin spent nearly six months in a medical facility, and Mr. Curtin was detained for nearly ten months total after he had been committed to the custody of the Attorney General for treatment via a judicial order. Given the clear violation of Mr. Curtin's due process rights, the district court erred as a matter of law when it denied his motion to dismiss the indictment against him. Based on that due process violation, this Court must now vacate Mr. Curtin's conviction and remand with instructions to dismiss the charges against him.

III. **The District Court for the Southern District of Florida erred as a matter of law when it failed to *sua sponte* recuse itself from deciding any material issues in Mr. Curtin's prosecution for threatening a Southern District of Florida federal magistrate judge where the District Court for the Southern District of**

**Florida decided substantive issues such as bond, competency and motions to dismiss the indictment against Mr. Curtin while Mr. Curtin remained imprisoned for almost a year before the prosecution was transferred to the Middle District of Florida.**

Federal law provides that "[a]ny . . . judge . . . of the United States **shall** disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). Judges must *sua sponte* recuse themselves when this statutory ground exists. *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Id.* (quoting *Lifeberg v. Health Services Acquisition Corp.*, 108 S. Ct. 2194, 2205 (1988).

"[R]ecusal under § 455(a) turns on 'whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" *In Re Moody*, 755 F.3d 891, 894 (11th Cir. 2014) (quoting *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th

Cir. 2013)).  "Any doubts must be resolved in favor of recusal."  *Id*. at 895

(quoting *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003)).

In *Moody*, this Court addressed the parameters of judicial recusal

under 28 U.S.C. § 455.  Walter Leroy Moody, Jr. was convicted in federal

and state courts for the 1989 murder of Eleventh Circuit Judge Robert S.

Vance.  *Moody*, 755 F.3d at 892.  After a federal grand jury returned a

murder indictment against Moody, all judges in the Northern District of

Georgia and all judges on the Eleventh Circuit recused themselves from

hearing Moody's case.  *Id*. at 893-894.  Moody's trial was presided over by

a district judge from the District of Minnesota and the trial took place in

the district of Minnesota.  *Id*.  Moody was convicted and sentenced to

several life terms.  The convictions and sentences were affirmed by this

Court but by a panel of judges from the Fourth Circuit.  *Id*.

The *Moody* panel, nearly a quarter of a century after the murder of

Judge Vance, decided a mandamus petition arising from Moody's federal

habeas petition attacking his State of Alabama conviction for the murder

of Judge Vance.   Moody argued that all district and magistrate judges

within the Eleventh Circuit should have been recused from hearing his

habeas petition and that all judges on the Eleventh Circuit should have been recused from hearing his mandamus petition. *Id*. at 893.

In determining that the three-judge panel need not recuse itself from hearing Moody's mandamus petition, the panel focused on the connection that the individual members of the panel may have had with the victim of the offense, Judge Vance. *Id*. at 895. Specifically, the panel noted that: 1) the panel members were not even part of the judiciary, let alone the Eleventh Circuit, at the time of Judge Vance's murder; 2) even though two panel members clerked for judges on the Eleventh Circuit, they did so prior to Judge Vance's murder; 3) no member of the panel enjoyed a personal relationship with Judge Vance or his family; and 4) the two Eleventh Circuit judges who took part in Moody's prosecution in Alabama had already recused themselves on that basis. *Id*. at 895. The panel concluded that "the only connection between the members of this panel and Moody's current case is our current service on the Eleventh Circuit and Judge Vance's service on the same court at the time of his death in 1989. And that is not enough." *Id*. at 896. In adopting the close-personal-connection-to-the-victim-judge analysis, the panel rejected a more stringent test from other circuits requiring recusal only when the

presiding judge was also a potential victim.  *See id.* at 896, 897 (distinguishing *In Re Nettles*, 394 F.3d 1001 (7th Cir. 2005), and *Clemens v. U.S. District Court for the Central District of California*, 428 F.3d 1175 (9th Cir. 2005)).

Ordinarily, a decision on recusal is reviewed for an abuse of discretion.  *United States v. Bailey*, 175 F.3d 966, 968 (11th Cir. 1999).  However, where a defendant fails to request recusal, the matter is reviewed for plain error.  *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004).

Here, Mr. Curtin did not initially request the recusal of the judge presiding over his criminal prosecution.  For over a year, during which Mr. Curtin remained imprisoned, judges from the Southern District of Florida made crucial decisions on substantive matters in Mr. Curtin's prosecution such as whether he would get a fair bond, whether he was competent to stand trial and whether the charges against him should be dismissed.  Specifically, on November 24, 2020, a magistrate judge from the Southern District of Florida determined that Mr. Curtin was not competent to stand trial and ordered his commitment to the Attorney General for analysis and treatment under 18 U.S.C. § 4241(d).  (DE 24).

And on August 6, 2021, a district judge from the Southern District of Florida denied Mr. Curtin's motion to dismiss the charges against him. (DE 79).   However, the *Moody* decision makes it clear, the district court's failure *sua sponte* to recuse itself was error that was plain.

Under the plain error doctrine, "there must be error, the error must be plain, and the error must affect substantial rights." *United States v. Knowles*, 66 F.3d 1146, 1157 (11th Cir. 1995) (citing *United States v. Olano*, 507 U.S. 725, 732-36, 113 S. Ct. 1770 (1993)).   "If these three prongs are met, [the court of appeals has] the discretion to correct the error, and [it] should do so if that error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Vazquez*, 53 F.3d 1216, 1221 (11th Cir. 1995) (quoting *Olano*, 507 U.S. at 736, 113 S. Ct. at 1779); *see also United States v. Atkinson*, 297 U.S. 157, 56 S. Ct. 391, 80 L. Ed. 555 (1936).

Again, in *Moody*, this court adopted a close-personal-connection-to-the-victim-judge test to determine whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."  *See Moody*, 755 F.3d at 894-896.  Applying the *Moody* test

45

here demonstrates that the district court committed an error that is plain.

Here, Mr. Curtin was charged with threatening a federal magistrate judge in the Southern District of Florida. Yet, another federal magistrate judge from the Southern District of Florida, a colleague of the alleged victim, made crucial and substantive determinations regarding Mr. Curtin's liberty and mental health status. A district court judge from the Southern District of Florida, another colleague of the alleged victim, made more crucial and substantive determinations in Mr. Curtin's prosecution including on a dispositive motion to dismiss the indictment against Mr. Curtin.

Objectively, it is clear that the alleged victim here and the judges from the Southern District of Florida have a close professional relationship. Under *Moody*, that relationship would lead "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought [to] entertain a significant doubt about the judge's impartiality." *See Moody*, 755 F.3d at 894-896. That, in turn, would trigger the mandatory recusal policy of section 455(a) which mandates that the judge **shall** disqualify herself in any proceeding

46

in which her "impartiality might reasonably be questioned."  *See* 28 U.S.C. § 455(a); *see also Moody*, 755 F.3d at 894-896.  Thus, there is error and that error is plain.

The error affected Mr. Curtin's substantial rights.  A plain error affects a defendant's substantial rights if he can "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016).  Here, as argued above, Mr. Curtin's due process rights were violated when he was detained far longer than authorized by statute based on an initial determination that he was incompetent to stand trial.  Based on Mr. Curtin's deprivation of liberty for almost a year, the error is clearly one that affected Mr. Curtin's substantial rights.  *See Molina-Martinez*, 136 S. Ct. at 1348-49 (2016) (holding that an error in Sentencing Guidelines calculations which may have resulted in an erroneous deprivation of liberty affected substantial rights).

In addition, the error is also the kind of error that undermines the fairness, integrity, and public reputation of the judicial proceedings so that this Court must act to correct the error.  Again, the judges from the Southern District of Florida should have recused themselves because "an

objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." That, by definition, is error that undermines the fairness, integrity, and public reputation of the judicial proceedings. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908-09 (2018) (holding that a plain error in Sentencing Guidelines calculations which may have resulted in an erroneous deprivation of liberty requires correction by appellate courts). Accordingly, this Court must vacate the judgment of the district court.

IV.   **The district court imposed a procedurally unreasonable sentence when it failed to reduce the offense level by four levels pursuant to U.S.S.G. 2A6.1(b)(6) where Mr. Curtin's offense involved a single instance involving little or no deliberation**.

The Sentencing Guidelines provide for a base offense level of 12 for offenses involving a threatening or harassing communication. U.S.S.G. § 2A6.1(a)(1). That guideline section further provides for a four-level reduction of the offense level where "the offense involved a single instance evidencing little or no deliberation." U.S.S.G. § 2A6.1(b)(6). The

background commentary to the section further elaborates that the statutes applicable to the section "cover a wide range of conduct, the seriousness of which depends upon the defendant's intent and the likelihood that the defendant would carry out the threat [and] [t]he specific offense characteristics are intended to distinguish such cases." U.S.S.G. § 2A6.1, comment. (backg'd).

In determining whether a defendant has evidenced little or no deliberation, this Court has looked outside the threat itself to the actions and intent of the defendant and to a demonstrated ability to carry out the threat. *See United States v. Russell*, 322 Fed. App'x 920, 923-924 (11th Cir. April 13, 2009) (unpublished). In affirming the denial of the four-level reduction in *Russell*, this Court relied on two factors: 1) the defendant stated that he had walked from Alabama to Georgia specifically to kill the President when he in fact had walked and hitchhiked from Alabama to Georgia; and 2) the defendant included a great deal of detail into why he needed to kill the President. *Id*. In analyzing this Court's decision in *Russell* along with decision from other circuits dealing with the four-level reduction and the question of sufficiency of deliberation, the Second Circuit came up with two general

49

factors that Courts have applied to the question. *United States v. Wright-Darrisaw*, 781 F.3d 35, 41 (2d Cir. 2015). First, the Court looked at "whether, and under what circumstances, the threat itself has been repeated." *Id.* Second, the Court looked at "whether there is evidence of planning or some effort to carry out the threat." *Id.* In analyzing those factors, the Court held "that the 'deliberation' to be considered under § 2A6.1(b)(6) of the Sentencing Guidelines is deliberation related to the communication of the threat." *Id.*

Applying the *Wright-Darrisaw* factors here leads to the simple conclusion that there was little or no deliberation as that term is used in § 2A6.1(b)(6). First, there was a single threat made by Mr. Curtin – the threat contained in his objections to the Magistrate Judge's report and recommendation. Second, and more significantly, there is NO evidence of planning or effort to carry out the threat by Mr. Curtin. Here, Mr. Curtin filed objections to the Magistrate Judge's report and recommendation that were emotional and clearly showed his frustration with the justice system. As part of those very emotional objections, he threatened the Magistrate Judge. There was no proof of planning or effort to carry out that threat. Compare, for example, this Court's

50

decision in *Russell* where the defendant walked and hitchhiked across state lines to carry out his threat and where the defendant had a very detailed planned explanation for carrying out that threat. There was absolutely no evidence of that kind of planning or effort to carry out the threat here. There were just words in an emotional pleading. Because the facts here demonstrate a complete lack of deliberation as required by § 2A6.1(b)(6), the district court erred in failing to reduce the offense level by four levels. This Court must thus vacate the judgment of the district court and remand the case for resentencing.

V.  **The district court imposed a substantively unreasonable sentence on Mr. Curtin when it imposed a sentence of sixty months' imprisonment which was the result of a substantial upward variance from the advisory sentencing range where neither the nature of offense nor the individual characteristics of Mr. Curtin warranted an upward departure and where the district court improperly focused on prior bad acts that were more than a decade old and were never prosecuted while ignoring Mr. Curtin's personal characteristics as a 78 year-old first**

**time offender with substantial physical and mental health issues**.

Section 3553(a) mandates that the sentencing court "shall impose a sentence **sufficient, but not greater than necessary**," and further mandates that the sentencing court, "in determining the particular sentence to be imposed, **shall consider** –

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed –

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(1),(2) (emphasis added). "[A] sentence still may be substantially unreasonable if it does 'not achieve the purposes of sentencing stated in § 3553(a).'" *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008).

"[A] district court commits a clear error in judgment when it weighs [the §3553(a)] factors unreasonably, arriving at a sentence that does not

achieve the purposes of sentencing as stated in § 3553(a)." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (citations omitted). In order to determine whether that has occurred, an appellate court is required to "review each step the district court took" in making the sentencing calculus, and then make the sentencing calculus itself. *Id.*

### District Court testified on disputed facts

At the sentencing hearing, the district court *sua sponte* brought up facts based on the judge's personal knowledge that were not presented as evidence, with no notice to Mr. Curtin and which went to the severity of the offense. Specifically, the district court stated as follows:

> And I want to say for the record there's some dispute in the record as to the phrase "road to glory." I will say I don't put any stead in it and don't base any sentence on it, but I'm very, very familiar with what I would call Evangelical-type Protestant churches. I grew up in one. And until I could get out of it, we went to church three times a week, Sunday morning, Sunday night, and Wednesday night. And "glory," the reference to "glory," in that milieu means heaven. It doesn't mean glory like we might think George Washington got glory in the Revolutionary War. Protestants in that type of church when they say "glory," that means heaven. Sometimes they say, my mother's passed; she's in glory. So again, I don't put any stead on it. I don't hinge any sentence on it, but to the extent that's a dispute in the record, I have to tell you what my experience is, and I'm quite certain about that.

(DE :7-8). The district court thus presented evidence on a crucial factual point that it conceded was in dispute. The court noted that it didn't "put any stead on it," but the evidence presented by the testimony of the district court was important to the severity of the offense. The testimony of the district court made it seem that Mr. Curtin's reference to the song and the lyrics was a reference to Judge Maynard being dead and going to heaven. That evidence was important because the normal meaning of the song title and lyrics in no way suggested anything menacing or threatening. However, the Court's testimony, based on the court's specialized knowledge, transformed the benign and even optimistic reference to "glory" into a more menacing reference to death. That specific evidentiary point had not been placed into evidence by any other witness for the government. In addition, counsel for Mr. Curtin had no notice that the district court was going to present that evidence and no opportunity to refute it in any meaningful way. The district court's presentation of that specialized evidence, and the emphatic certainty that it provided to the evidence, clearly colored the sentencing to the prejudice of Mr. Curtin and was completely improper. The district court ended up imposing a sentence that was 100% increase over what had

been requested.  The testimonial evidence provided by the district court clearly had an effect on the sentence imposed.  Because the improper evidence should never have been provided or relied on, this Court must vacate the judgment of the district court and remand the matter to the district court for resentencing.

## Improper Weighing of Sentencing Factors

In determining the appropriate sentence to impose on Mr. Curtin, the district court improperly gave too much weight to uncharged prior conduct for a 78 year-old man with no prior criminal convictions and zero criminal history points while at the same time failing to properly weigh the specific characteristics of Mr. Curtin such as his age, failing physical health and most importantly, his failing mental health.  It was only through an improper weighing of the sentencing factors that the district court arrived at an upward variance sentence that was an 82% increase from the top of the advisory sentencing range, which was the sentence requested by the government, and more than three times higher than the sentence requested by Mr. Curtin.

## Mr. Curtin's Personal Characteristics

As noted above, federal statute mandates that a sentencing court

55

must take into account the personal characteristics of a defendant being sentenced. 18 U.S.C. § 3553(a)(1). At the time of sentencing, Mr. Curtin was a 78 year-old male in very poor health. Specifically, Mr. Curtin suffers from hypertension, heart disease, Type 2 diabetes, and an umbilical hernia. PSR ¶ 55. Mr. Curtin was fitted with a defibrillator in 2013 and, as noted by counsel at sentencing, the defibrillator malfunctioned during his imprisonment causing Mr. Curtin to be transported to a medical facility. Mr. Curtin also suffers from skin cancer. Most prominently, Mr. Curtin suffers from mental health issues. Mr. Curtin has been diagnosed with Schizophrenia and other psychotic disorders. PSR ¶ 56. In fact, in the presentence report, the probation officer highlighted the fact that Mr. Curtin's "untreated mental health diagnosis" provided a factor that might warrant a sentence below the advisory sentencing range. PSR ¶ 84.

Yet, none of those factors were considered in reaching a sentence that was sufficient but not greater than necessary. In response to defense counsel, and after it had already arrived at the final sentence, the district court noted that it had taken Mr. Curtin's mental health issues into account and that was the only reason that the sentence imposed would

not be higher. However, that post-hoc rationale simply rings hollow. It is very difficult to believe that the district court would have imposed a sentence far in excess of the final sentence of 60 months' imprisonment for an offense with an advisory sentencing range of 27-33 months and a 78 year-old, first-time offender, and that only Mr. Curtin's mental health reduced that sentence to a still-excessive 60 months. A more logical explanation is that Mr. Curtin's personal characteristics simply were not included in the analysis of determining an appropriate sentence.

## Mr. Curtin's History

The flipside of the district court's analysis is that it relied too heavily on Mr. Curtin's history. Specifically, it is clear from the statements of the district court that the sentencing calculus for Mr. Curtin was driven mostly by prior bad acts of Mr. Curtin that were investigated but never charged as crimes. Prior to sentencing, the government filed objections to the presentence report in which they included materials from the United States Marshals Service. (DE 206). Specifically, the government referenced a March 10, 2005 letter from Mr. Curtin to a district judge in the Eastern District of Louisiana, an April 22, 2005 letter from Mr. Curtin to two district judges in the Southern

District of Florida, and a December 18, 2007 letter from Mr. Curtin to one of those district judges in the Southern District of Florida. *Id.* Those letters, written fourteen to seventeen years prior to Mr. Curtin's sentencing hearing, were investigated by the United States Marshals Service for a threat assessment and none were deemed sufficient to even start a criminal investigation against Mr. Curtin.

Yet, at sentencing, the district court made clear that its decision to vary upward from an advisory sentencing range of 27 to 33 months was based almost exclusively on these letters written more than a decade earlier. Specifically, the district court concluded as follows:

> The Court has heard from the defendant and from defense, and the parties made statements in their behalf or waived the opportunity to present any further evidence. And pursuant to Titl1 18 United States Code 3551 and 3553, it's the judgment of the Court that Mr. Curtin is committed to the Bureau of Prisons fo ran upward variance of 60 months. The reason why is a pattern. When I get letters that we're going to send a microwave machine or ask permission to blow the brains of out of Chief Judge King ad that we want sweat, perspiration to poor [sic] fro Judge Croom's armpit, I don't know why it is that we keep sending letters to judges. We have an ongoing, disturbing conversation in writing with Judge Bert Jordan – Adalberto Jordan. I'm so bad at that. This is a pattern, and the pattern escalated and it escalated, and I wasn't really impressed with this tincture, if that's the word, this piece of reference to race in this threat. You know, this is an older white gentleman threatening a young African-American female. And I guess there are some reason to comment on

58

race, but from the victim's point of view, there's a little bit of a history in Florida, and that little reference was gratuitous and added to what was a clear threat.  So the upper variance is because of the pattern, the need to respect the law, which is grossly disrespected, and the need for public safety.   And he says, well, he hasn't hurt anybody.  Well, yes, these threats are hurtful. Someone gets a letter where someone is suggesting we are going to blow their brains out or I'm going to threaten Magistrate Judge Smith in Orlando with bodily injury and death, they're very hurtful.  Thank God it hasn't escalated further.   So it's public safety and the repeated pattern that I see over a course of many years, almost to the point where marshals beat the path out there to do a threat assessment every time one of these letters comes.

(DE 237:46-47).

Here, the district court committed a clear error in judgment when it weighed the § 3553(a) factors unreasonably, arriving at a sentence that does not "achieve the purposes of sentencing as stated in § 3553(a)." *See Irey*, 612 F.3d at 1189.  As such, this Court must vacate the judgment and remand the case for resentencing.

## CONCLUSION

Based on the foregoing, this Court must vacate the judgment of the district court and remand the matter to the district court.

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

*/s/ Bernardo Lopez*
Bernardo Lopez
Assistant Federal Public Defender
Attorney For Appellant Curtin
One E. Broward Blvd., Suite 1100
Fort Lauderdale, Florida 33301
Telephone No. (954) 356-7436

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 12,036 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Century Schoolbook.


*/s/ Bernardo Lopez*
Bernardo Lopez
Assistant Federal Public Defender

61

**CERTIFICATE OF SERVICE**

I HEREBY certify that on this 15th day of July, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent four copies to the Clerk of the Court via third party commercial carrier for delivery within three days. I also certify that the foregoing document is being served this day via CM/ECF on Lisa Tobin Rubio, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

For counsel of record who have not registered for CM/ECF and pro se parties, the foregoing document has been served by U.S. Mail.

s/ *Bernardo Lopez*
Bernardo Lopez
Assistant Federal Public Defender